**Richard B. HENRY, Plaintiff,**

v.

**GREENVILLE AIRPORT COMMISSION, O. L. Andrews, Manager, Greenville Municipal Airport, William T. Adams, Chairman, Greenville Airport Commission and Hugh K. Aiken, Olin H. Spann; Edward McGrady, William B. Coxe, Members of the Greenville Airport Commission, Defendants.**

**Civ. A. No. 2491.**

United States District Court
W. D. South Carolina,
Greenville Division.

Aug. 5, 1959.

Lincoln C. Jenkins, Jr., Columbia, S. C., Jack Greenberg, New York City, for plaintiff.

Thomas A. Wofford, W. H. Arnold, Theodore A. Snyder, Jr., Robert F. Plaxco, Jr., Greenville, S. C., for defendants.

TIMMERMAN, District Judge.

Motions in the above stated case were heard on July 20, 1959, at Columbia,

South Carolina. There was, on behalf of the plaintiff, a motion for a preliminary injunction, and, on behalf of the defendants, motions to strike paragraphs 1(a), 1(c), 2 and 5 of the complaint, "on the ground it appears upon the face of the complaint that the said allegations are immaterial", and a motion to dismiss the complaint, on the grounds "(1) That the Court has no jurisdiction of the subject matter of the action" and "(2) That the complaint fails to state a claim upon which relief can be granted". The motion to dismiss is under Rule 12(b) (1) and (6) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

### Plaintiff's Motion for Preliminary Injunction.

This motion was filed January 24, 1959. When it was called for hearing, July 20, 1959, counsel for plaintiff offered two additional affidavits for use on the hearing and at that time furnished copies for the first time to counsel for the defendants, who objected to the use of the affidavits on the hearing because they had had no time to read or to prepare a reply to them. The Court ruled that it would continue the hearing of the motion to give the defendants an opportunity to read the affidavits and reply thereto, unless plaintiff was willing to proceed with the hearing on the original motion and supporting affidavit. Counsel for the plaintiff agreed to proceed without the proferred affidavits being considered. Therefore, the affidavits were not considered by the Court on the hearing of the motion.

The purpose of the plaintiff's motion is to restrain the defendants "from making any distinction based upon color in regard to services at the Greenville Municipal Airport". The motion is based on the stated conclusion of the plaintiff, "that unless restrained by this court defendants will commit the acts referred to which will result in irreparable injury, loss and damage to plaintiff during the pendency of this action, as will more fully appear from the affidavit of plaintiff attached hereto and made a part

hereof". The only acts attributed to any of the defendants in plaintiff's complaint are contained in paragraph 6 thereof. Therein it is stated, (a) " * * the manager of the Greenville Airport ordered plaintiff out, advising him that 'we have a waiting room for colored folks over there' "; and (b) "plaintiff informed him that he was in interstate traveler and that plaintiff believed that said manager's action was in violation of federal law and ICC regulations. Nevertheless, said manager insisted that plaintiff go. As a consequence plaintiff was required to be segregated".

As noted above, plaintiff's motion for injunction is based upon his own affidavit. Omitting the formal parts of the affidavit the rest of it may be summarized as follows:

1. That he is the plaintiff in this case.

2. That he resides in the State of Michigan and is a citizen of the United States.

3. That he is a civilian employee of the United States Air Force at Selfridge Air Force Base in the State of Michigan.

4. That he was sent from Michigan to the Donaldson Air Force Base near Greenville, South Carolina.

5. That in preparation for his return to Michigan an official at the Donaldson Air Force Base procured air travel tickets for him on a flight scheduled to leave Greenville Air Terminal Friday, November 7, 1958, at 5:21 p. m.

6. That one hour and one minute before the scheduled flight of his plane plaintiff went to the Greenville Air Terminal and selected and occupied a seat, for an hour's wait, in what he regarded as the white section of the waiting room there.

7. That "a man purporting to be the manager ordered plaintiff out, advising him 'we have a waiting room for colored folks over there' ". Whereupon "plaintiff informed him that he was in interstate traveler and that plaintiff believed

that said manager's action was in violation of federal law and ICC regulations".

8. That it is plaintiff's opinion that he "will suffer great irreparable damage" if the preliminary injunction is not granted and that the reason for his apprehension is "that he reasonably expects during the course of his employment * * * that his travels will, on future occasions, take him to the Greenville Municipal Airport".

9. That the Greenville Airport Commission was created by an Act of the Legislature of the State of South Carolina in 1928, p. 1898, "for the purpose of establishing and maintaining aeroplane landing fields and county parks in the County of Greenville; and to make such rules and regulations as may be necessary in the conduct and operation of said aeroplane landing fields and county parks".

█ Plaintiff's affidavit as drawn makes it well-nigh impossible to segregate factual statements from surmises and opinions; but giving the affidavit most favorable consideration it falls short of indicating any necessity for a preliminary injunction to protect any legitimate right the plaintiff has. According to his affidavit and his complaint it is by no means certain that he will ever return to the Greenville Airport, although he surmises that he may return at some time in the future. The plaintiff speaks of discrimination without unequivocally stating any fact warranting an inference of discrimination. The nearest thing to an unequivocal statement in his affidavit is the asserted fact that the purported manager of the Greenville Air Terminal "advised him that 'we have a waiting room for colored folks over there'". Preceding that statement plaintiff's affidavit contains the bald assertion that the manager "ordered me out". However, the only words attributed to the manager by the plaintiff hardly warrant any such inference or conclusion. A like comment properly should be made concerning the further assertion in plaintiff's affidavit that he "was required to be segregated". What

that loose expression means is any one's guess. From whom was he segregated? The affidavit doesn't say. Was he segregated from his family or from his friends, acquaintances or associates, from those who desired his company and he theirs? There is nothing in the affidavit to indicate such to be true. Was he segregated from people whom he did not know and who did not care to know him? The affidavit is silent as to that also. But suppose he was segregated from people who did not care for his company or association, What civil right of his was thereby invaded? If he was trying to invade the civil rights of others, an injunction might be more properly invoked against him to protect their civil rights. I know of no civil or uncivil right that any one has, be he white or colored, to deliberately make a nuisance of himself to the annoyance of others, even in an effort to create or stir up litigation. The right to equality before the law, to be free from discrimination, invests no one with authority to require others to accept him as a companion or social equal. The Fourteenth Amendment does not reach that low level. Even whites, as yet, still have the right to choose their own companions and associates, and to preserve the integrity of the race with which God Almighty has endowed them.

Neither in the affidavit nor in the complaint of the plaintiff is there any averment or allegation that whatever the defendants may have done to the plaintiff was done at the direction or under color of state law. It is nowhere stated in either what right the plaintiff claims was denied him under color of state law. A state law was passed in 1928 that "created a Commission * * * to be known as Greenville Airport Commission." That Commission consists of five members, two selected by the City Council of the City of Greenville, two by the Greenville County Legislative Delegation, and the fifth member by the majority vote of the other four. The Commission so created is "vested with the power to receive any gifts or donations from any source, and

also to hold and enjoy property, both real and personal, in the County of Greenville, * * * *for the purpose of establishing and maintaining aeroplane landing fields* * * *; and to make such rules and regulations as may be *necessary in the conduct and operation of said aeroplane landing fields*". (Emphasis added.) Further, the Act authorizes "The City of Greenville * * * to appropriate and donate to said Commission such sums of money as it may deem expedient and necessary for the purposes aforesaid". There is nothing in the Act that requires the Commission to maintain waiting rooms of any sort, segregated or unsegregated.

There is nothing in the affidavit or complaint of the plaintiff which could be tortured into meaning that the defendants had denied the plaintiff the use of the authorized airport landing fields. He had a ticket which authorized him to board a plane there. He was not denied that right. In fact there is no clear cut statement of any legal duty owed the plaintiff that defendants breached; and there is no showing that the plaintiff was damaged in any amount by anything done by the defendants, or by any one of them, under color of state law.

■ The motion for a preliminary injunction should be denied.

### Defendants' Motions to Strike.

When these motions were called for hearing, plaintiff's counsel, in response to an inquiry by the Court, stated that this court's jurisdiction of the instant case "is primarily predicated on Title 28 U.S.Code, Section 1343, which provides that 'The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: * * * (3) to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States' ".

■ The motion to strike paragraphs 1(a), 1(c), 2 and 5 of the complaint will be considered in the light of plaintiff's stated jurisdictional position. So the question here is, Shall the designated paragraphs be struck on the ground that upon the face of them they are immaterial? Paragraph 1(a) invokes the jurisdiction of this court under the provisions of Section 1331, Title 28 U.S.Code. It provides that district courts "shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,-000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States". Under this Section two conditions must concur to establish jurisdiction. First, the matter in controversy must exceed the sum or value of $10,000; and, second, the claim asserted must arise under the constitution or laws of the United States. There is not a single well pleaded fact that warrants the inference that the matter in controversy exceeds the value of $10,000, exclusive of interest and costs. There is no allegation in the complaint that plaintiff was put to any extra expense or that he was humiliated or degraded in the presence of others by anything done by the defendants or any of them. Accepting his word for it, the only person with whom the plaintiff had any dealings at the time alleged in the complaint was a person to whom he referred as the "purported manager" of the Greenville Airport, and to him is ascribed these words, "we have a waiting room for colored folks over there". How any one could say that such a remark addressed by one person to another could possibly injure the person addressed more than the amount of $10,000 is inconceivable. Besides, plaintiff's complaint points to no injury he sustained, and, claiming no injury, he could not legitimately place a value of more than $10,000 on it. If the Court should supply the inference that he was damaged in some way to some extent, not an unusual procedure in some courts on occasions, it would still be left to speculation as to what is the

actual amount in controversy. The mere fact that the controversy presented arises under the constitution or laws of the United States, if that should be accepted as a fact, would not be sufficient to establish the court's jurisdiction. There would still exist the insurmountable obstacle of lack of the jurisdictional amount in controversy.

■ Paragraph 1(c) of the complaint, which defendants also ask the Court to strike, invokes the jurisdiction of the Court under Section 1332, Title 28 U. S. Code. Jurisdiction under this Section cannot be invoked, even if diversity is shown, since the amount in controversy is not in excess of $10,000, exclusive of interest and costs. Here again jurisdiction fails because the requisite jurisdictional amount is not in controversy. Plaintiff doesn't even ask that he be awarded damages in any amount, much less in an amount in excess of $10,000, exclusive of interest and costs.

■ Paragraph 2 of the complaint alleges nothing more than that the action is brought pursuant to Rule 23(a) (3) of Federal Rules of Civil Procedure on behalf of the plaintiff and all other Negroes similarly situated, without even alleging that there are others similarly situated. About himself the plaintiff says, he is a resident of the State of Michigan, a citizen of the United States, a civilian employee of the Government, with a civil service rating, and that he may some day return to the Greenville Airport. And all that he alleges about a class action is that he "brings this action pursuant to Rule 23(a) (3) of the Federal Rules of Civil Procedure for himself and on behalf of all other negroes similarly situated, whose number make it impracticable to bring them all before the court; they seek common relief based upon common questions of law and fact".

There is no allegation in the complaint that the defendants have ever done or threatens to do anything that is actionable to any Negro other than the plaintiff. Moreover, there is no allegation that other Negroes have been accorded unequal treatment at the Airport, that the defendants are impecunious, or that for any other reason, they cannot be made to respond in damages for any civil wrong that they, or any of them, may have done or may hereafter do to the plaintiff or to any other Negro.

The most that can be said of this case as a class action is, that it belongs to that class sometimes denominated "Spurious Class Suits"; and, since no other Negro has asked to be made a party to it, this action can be classed as nothing more than a suit by the plaintiff for the benefit of himself. The instant case is quite similar to Jinks v. Hodge, D.C., 11 F. R.D. 346, 347, the big difference being that the cited case was for injunctive relief and to recover for a tort, while the instant case is solely for an injunction. Judge Darr held the Jinks case to be "what Professor Moore in his Federal Practice calls a Spurious Class Suit, which is a permissive joinder device", adding that:

"No persons other than the named plaintiffs have intervened and this leaves the suit solely by the named plaintiffs. The named plaintiffs do have a question of law or fact common to others similarly situated but the right of each is distinct. The suit based upon this portion of the Civil Rights Act, which finds life from the First Section of the Fourteenth Amendment, unquestionably gives a personal right of action to a citizen of the United States. Therefore, the complaint is entirely insufficient for the relief claimed".

■ The motion to strike paragraph 5 of the complaint is the last of defendants' multiple motion to strike. All that is alleged in this paragraph is, that plaintiff is informed and believes that the defendants received contributions from the Government from time to time "for the purpose of constructing substantial portions of and maintaining operations at the Greenville Municipal Airport". Just what the Government's giving or failing to give something to encourage the construction of an airport has to do with a litigant's claim that he has been

deprived of a civil right under color of state law, I fail to see. The allegations of paragraph 5 are clearly immaterial.

### Defendants' Motion to Dismiss the Complaint.

This motion is made under Rule 12 (b) (1) and (6), Federal Rules of Civil Procedure. It is predicated, first, upon the ground that this court lacks jurisdiction over the subject matter of the action; and, second, on the ground that the complaint fails to state a claim upon which relief can be granted.

▮ The jurisdiction of this court is invoked by the plaintiff under Section 1343, Title 28 U.S.Code. It is appropriate, therefore, that we consider the extent of the jurisdiction that is therein conferred on this court. By it district courts are given jurisdiction of civil actions " * * * to redress the deprivation, under color of State law, * * of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens * *". Hence we must look to the complaint to ascertain (1) what right plaintiff claims he has been deprived of, (2) secured by what constitutional provision or Act of Congress providing for equal rights of citizens, and (3) under color of what state law? It is not enough for the plaintiff to allege that he has been deprived of a right or a privilege. He must go further and show what right, or privilege, he has been deprived of, by what constitutional provision or Act of Congress it is secured, and under color of what state law he has been deprived of his stated right. If the plaintiff fails to allege any one or more of the specified elements his action will fail as not being within the jurisdiction of this court.

As pointed out hereinabove, there is no allegation in the complaint that anything complained of was done under color of a specified state law. The Court has been pointed to no state law requiring the separation of the races in airport waiting rooms, and its own research has developed none. Moreover, there is no state law that has been brought to the Court's attention, or that it has discovered, which requires the defendants, or any one else, to maintain waiting rooms at airports, whether segregated or unsegregated. Hence the advice which it is alleged that the "purported manager" of the Airport gave the plaintiff, saying, "we have a waiting room for colored folks over there", could not have been given under color of a state law since there is no state law authorizing or commanding such action.

▮ In connection with the tendered issue of the court's jurisdiction, plaintiff claims that he has a cause of action arising under Section 1981, Title 42 U. S. Code. It provides:

"All persons within the jurisdiction of the United States shall have the same right in every State * * to the full and *equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens*, and shall be subject to like punishments, pains, penalties, taxes, licenses, and exactions of every kind * * ". (Emphasis added.)

The undoubted purpose of Congress, in enacting Section 1981, was to confer on Negro citizens rights and privileges equal to those enjoyed by white citizens and, at the same time, to impose on them like duties and responsibilities. The Court's attention has been directed to no law that confers on any citizen, white or Negro, the right or privilege of stirring up racial discord, of instigating strife between the races, of encouraging the destruction of racial integrity, or of provoking litigation, especially when to do so the provoker must travel a great distance at public expense.

It is inferable from the complaint that there were waiting room facilities at the Airport, but whether those accorded the plaintiff and other Negroes were inferior, equal or superior to those accorded white citizens is not stated. It is also inferable from the complaint that the

plaintiff did not go to the waiting room in quest of waiting room facilities, but solely as a volunteer for the purpose of instigating litigation which otherwise would not have been started. The Court does not and should not look with favor on volunteer trouble makers or volunteer instigators of strife or litigation. A significant feature of Section 1981, which by some is little noticed and often ignored, is that it places squarely on Negroes obligations, duties and responsibilities equal to those imposed on white citizens, and that said Section does not confer on Negroes rights and privileges that are superior and more abundant than those accorded white citizens.

Williams v. Howard Johnson's Restaurant, argued before the Fourth Circuit Court of Appeals June 15, 1959, is in many respects similar to the instant case. 268 F.2d 845. As here, the plaintiff had a government job. He went from his place of public employment into the State of Virginia to demand that he be served in a restaurant known to him to be operated by its owner, the defendant, solely for white customers. He invoked the jurisdiction of the court both on its equity side and on its law side for himself and for other Negroes similarly situated. The suit was dismissed by the district court. Upon the hearing it was conceded that no statute of Virginia required the exclusion of Negroes from public restaurants. Hence the Fourteenth Amendment didn't apply. No action was taken by the defendant under color of state law. Notwithstanding the absence of a state law applicable to the situation, the plaintiff argued that the long established local custom of excluding Negroes from white restaurants had been acquiesced in by Virginia for so long that it amounted to discriminatory state action. The Appellate Court disagreed, and so do I. As pointed out in Judge Soper's opinion in the Howard Johnson's Restaurant case, "This argu-

ment fails to observe the important distinction between activities that are required by the state and those which are carried out by voluntary choice and without compulsion by the people of the state in accordance with their own desires and social practices". Further Judge Soper said:

"The customs of the people of a state do not constitute state action within the prohibition of the Fourteenth Amendment. As stated by the Supreme Court of the United States in Shelley v. Kraemer, 334 U. S. 1, 68 S.Ct. 836, 842 [92 L.Ed. 1161]:

" 'Since the decision of this Court in the In re Civil Rights Cases, 1883, 109 U.S. 3, 3 S.Ct. 18, 27 L. Ed. 835, the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment *is only such action as may fairly be said to be that of the States.* That Amendment erects no shield against merely private conduct, however discriminatory or wrongful'. (Emphasis supplied.)"

To say that the right of one person ends where another's begins has long been regarded as a truism under our system of constitutional government. While the rights and privileges of all citizens are declared to be equal by our constitution there is no constitutional command that they be exercised jointly rather than severally; and, if there were such a constitutional command, the rights and privileges granted by the constitution would be by it also destroyed. A constitution so written or interpreted would be an anomaly.

It is concluded that, for reasons stated, the complaint should be dismissed and this case ended. An order for final judgment, in conformity with this opinion, will be signed on presentation.