279 F.2d 751
 Richard B. HENRY, Appellant,
v.
GREENVILLE AIRPORT COMMISSION; O. L. Andrews, Manager, Greenville Municipal Airport; Charles E. Robinson, Jr., Chairman, Greenville Airport Commission, and Aug. W. Smith; Olin H. Spann; Edward McCrady; William B. Coxe, Members of the Greenville Airport Commission, Appellees.
 No. 8009.
 United States Court of Appeals Fourth Circuit.
 Argued January 15, 1960.
 Decided April 20, 1960.
 
 Jack Greenberg, New York City (Lincoln C. Jenkins, Jr., Columbia, S. C., and Thurgood Marshall, New York City, on brief), for appellant.
 Thomas A. Wofford, Greenville, S. C. (W. H. Arnold, Robert F. Plaxco, Jr., Love, Thornton & Arnold, and Theodore A. Snyder, Jr., Greenville, S. C., on brief), for appellees.
 Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an action to enjoin the exclusion of the plaintiff and other Negroes, similarly situated, from the general waiting room in the passenger terminal at the Greenville (South Carolina) Municipal Airport. It was dismissed by the District Court upon the grounds that the court was without jurisdiction of the subject matter of the action and that the complaint failed to state a claim upon which relief could be granted.[1] The District Court was of the opinion that the complaint did not clearly allege that the plaintiff was segregated from other passengers, at least, not from those who desired his company, or that any other Negro had been subjected to similar treatment or was similarly situated. It also concluded that whatever was done was not state action for no law required the Commission to provide or maintain a waiting room or to segregate the races in waiting rooms it did provide.
 
 
 2
 We think the complaint was entitled to a more liberal construction than it received and that it was erroneously dismissed.
 
 
 3
 The complaint fairly alleges the following facts:
 
 
 4
 Henry is a resident of the State of Michigan and is a civil service employee of the United States Air Force at Head-quarters Tenth Air Force, Selfridge Air Force Base, Michigan. In the course of his employment, he is required to travel about the United States. In November 1958, his duties brought him to Donaldson Air Force Base near Greenville, South Carolina on Air Force business and to the Greenville Municipal Airport, and may reasonably be expected to occasion his return to the Greenville Municipal Airport. In preparation for his return to Michigan, the Air Force travel officer at Donaldson procured air travel tickets for him on a commercial flight leaving from Greenville Municipal Airport. Henry arrived at the terminal an hour before flight time and seated himself in the waiting room. Shortly thereafter the manager of the Airport ordered him out of the waiting room and informed him that, "we have a waiting room for colored folks over there." Henry told the manager that he was an interstate traveler and that he believed the manager's action violated federal law and ICC regulations. The manager, nevertheless, insisted that he leave. Henry was thus "required to be segregated."
 
 
 5
 Henry brought this action, on behalf of himself and all other Negroes similarly situated, against the members of the Greenville Airport Commission and the manager of the Airport to restrain defendants from making any distinction on the basis of race in regard to service at the Airport. He alleged that the Commission is a governmental body of the state, and attached as an exhibit a copy of the act which created it.
 
 
 6
 Accorded the liberal construction to which it is entitled, the complaint fairly alleges that by state action Henry was excluded from the waiting room used by other passengers and that the exclusion was because of his race and discriminatory. From the allegation that he was directed to a separate waiting room maintained for colored people, it is fairly inferable that other Negroes had been similarly treated.
 
 
 7
 Foreclosure of opportunity to offer proof in support of the allegations of the complaint was unwarranted.
 
 
 8
 Clearly, whatever was done under the direction, or with the sanction of the Commission was state action.
 
 
 9
 The Greenville Airport Commission was created by the General Assembly of South Carolina in 1928.[2] It is composed of five members, two selected by the City Council of Greenville, two selected by the Greenville County Delegation in the State Legislature, and a fifth selected by a majority vote of the other four members. The Commission is empowered "to receive any gifts or donations from any source, and also to hold and enjoy property, both real and personal, in the County of Greenville, * * * for the purpose of establishing and maintaining aeroplane landing fields * * *; and to make such rules and regulations as may be necessary in the conduct and operation of said aeroplane landing fields * * *." The Act further authorizes the City of Greenville "to appropriate and donate to said Commission such sums of money as it may deem expedient and necessary for the purposes aforesaid." In case the property acquired by the Commission "shall cease to be used for the purposes herein provided, then all * * * said property, both real and personal, may be. * * * by the Commission sold and converted into cash and said proceeds shall be divided among the City of Greenville, the County of Greenville, the Park and Tree Commission of the City of Greenville, and the American Legion organization of the County of Greenville * * *."
 
 
 10
 The state action proscribed by the Fourteenth Amendment is not limited to those acts which have been affirmatively directed by the highest legislative body of the state. Acts of a state's political subdivisions and its administrative agencies, serving a public purpose and supported by public funds, are equally within the constitutional requirements.[3] Even the acts of lessees of such subdivisions and agencies, under some circumstances, may be state action.[4]
 
 
 11
 Here the Commission was the creature of the state, operating a municipal airport with the support of municipal funds. The General Assembly had expressly delegated to it authority to promulgate rules and regulations governing use of the airport. In every sense, it was an agency of the state, and its exercise of its delegated powers was state action.
 
 
 12
 It is now well established that property acquired, maintained and operated by a state or by its political subdivisions and agencies must be equally available to citizens without discrimination because of race. The principle has been applied to public schools,[5] public parks,[6] public golf courses,[7] public swimming pools,[8] publicly operated restaurants,[9] and to municipal air terminals.[10]
 
 
 13
 Since the alleged conduct of the Commission, if established, would be a violation of the rights of the plaintiff secured by the Fourteenth Amendment, the District Court had jurisdiction of the cause of action under 28 U.S.C.A. § 1343.[11] The court, therefore, was unwarranted in dismissing the action.
 
 
 14
 The judgment of the District Court will be reversed and the cause remanded for further proceedings not inconsistent with this opinion, including a prompt hearing upon the motion for a preliminary injunction if that motion should be renewed.
 
 
 15
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 Henry v. Greenville Airport Commission, D.C.W.D.S.C., 175 F.Supp. 343
 
 
 [2]
 Acts and Joint Resolutions of General Assembly of the State of South Carolina, No. 919, 1928
 
 
 [3]
 Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; Holmes v. City of Atlanta, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 776; Dawson v. Mayor and City Council of City of Baltimore, 4 Cir., 220 F.2d 386, affirmed 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774; City of Greensboro v. Simkins, 4 Cir., 246 F. 2d 425; Department of Conservation & Development, etc. v. Tate, 4 Cir., 231 F. 2d 615; Derrington v. Plummer, 5 Cir., 240 F.2d 922; City of St. Petersburg v. Alsup, 5 Cir., 238 F.2d 830; Coke v. City of Atlanta, D.C.N.D.Ga., 184 F.Supp. 579
 
 
 [4]
 Derrington v. Plummer, 5 Cir., 240 F.2d 922; City of Greensboro v. Simkins, 4 Cir., 246 F.2d 425; Department of Conservation & Development, etc. v. Tate, 4 Cir., 231 F.2d 615; Lawrence v. Hancock, D.C.S.D.W.Va., 76 F.Supp. 1004
 
 
 [5]
 Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873
 
 
 [6]
 Dawson v. Mayor and City Council of City of Baltimore, 4 Cir., 220 F.2d 386, affirmed 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774; Department of Conservation & Development, etc. v. Tate, 4 Cir., 231 F.2d 615
 
 
 [7]
 City of Greensboro v. Simkins, 4 Cir., 246 F.2d 425; Holmes v. City of Atlanta, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 776
 
 
 [8]
 City of St. Petersburg v. Alsup, 5 Cir., 238 F.2d 830; Tonkins v. City of Greensboro, 4 Cir., 276 F.2d 890
 
 
 [9]
 Derrington v. Plummer, 5 Cir., 240 F.2d 922
 
 
 [10]
 Coke v. City of Atlanta, D.C.N.D.Ga., 184 F.Supp. 579
 
 
 [11]
 "Civil rights and elective franchise
 "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 "* * * * *
 "(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
 "* * * * *"