Linwood A. JONES, Jr., Weldon W. Christopher, and Donald K. Lyles

v.

MARVA THEATRES, INC., and The City of Frederick.

Civ. No. 10704.

United States District Court
D. Maryland.

Jan. 5, 1960.

Juanita Jackson Mitchell and Tucker R. Dearing, Baltimore, Md., and Jack Greenberg, New York City, for plaintiffs.

William M. Storm, Frederick, Md., and Robert E. Sher, Washington, D. C., for Marva Theatres, Inc.

Charles McC. Mathias, Jr., Frederick, Md., for City of Frederick.

THOMSEN, Chief Judge.

In this action Negro plaintiffs seek an injunction against segregated seating arrangements or any other kind of discrimination in a theatre, owned by the City of Frederick, Md., part of the City Hall building, on city-owned property, but leased to Marva Theatres, Inc.

(Marva), a private motion picture theatre operator.

The theatre, known as the City Opera House, was built in 1875 as a place of public assembly. The same entrance serves the City Hall and the Opera House. Since 1927 the Opera House has been leased to private motion picture theatre operators. The term of the current lease, which was made after competitive bidding, is from October 1, 1950 to September 30, 1960. As part of the lease agreement Marva made substantial repairs and improvements.

No state or local law requires or prohibits segregation in theatres, and the lease contains no specific provision with respect thereto. However, the lease includes furniture, equipment and certain facilities which are described in the exhibit attached to the lease as "box office", "colored box office", "men's toilet", "colored men's toilet", "ladies' toilet", and "colored women's toilet".

The lease provides that the theatre shall be operated not less than six afternoons and nights a week, despite the fact that it is not a percentage lease, and limits the type of shows which may be presented. The City of Frederick reserved the right to use the Opera House or to grant its use to others four days a year. This privilege is generally exercised, and free use of the Opera House has been granted to various social, educational and other organizations.

Marva operates the City Opera House as a motion picture theatre open to the public seven days a week. It does not now maintain a racially segregated box office, but does maintain racially segregated seating and toilet facilities. It reserves the first floor of the main auditorium and the front of the balcony exclusively for white patrons; the back rows of seats in the balcony are set aside exclusively for Negro patrons. The decision as to the seating arrangements was made by Marva's president, carrying out the policy which had prevailed there for some time. He felt it was the only

policy he could profitably pursue. A similar policy has been followed for several years by the Tivoli Theatre, the only other theatre operating in the city.[1]

Plaintiffs are Negroes, bacteriologists, residents of Frederick, and are employed at Fort Detrick on the edge of the City.

On or about March 10, 1958, they were refused admission to the first floor of the main auditorium of the Opera House solely because of their race. They were directed by Marva's employees to the section of the balcony which is set aside exclusively for Negro patrons.

If the plaintiffs or any other Negroes were again to present themselves for admission to the first floor of the main auditorium of the Opera House, Marva would refuse to admit them to that section for the sole reason that they are Negroes.

The City of Frederick has desegregated all public facilities under its control, but it took the position at the hearing that the existing lease gave it no authority to dictate to Marva, one way or the other, what the seating arrangements in the theatre should be.

In view of these facts, at the conclusion of the hearing, I inquired of counsel whether it might be possible to dispose of the case by an agreement of the parties that any lease of the theatre for a term beginning after September 30, 1960, should contain a provision against discrimination, and that in the meantime the plaintiffs would refrain from pressing their claimed rights. The plaintiffs and the N.A.A.C.P., which has been supporting their suit, agreed to such a disposition, if promptly made and supported by an appropriate decree. The Board of Aldermen of the City of Frederick promptly adopted the following resolution, approved by the Mayor: "If the City of Frederick offers the City Opera House for rent after the expiration of the current lease on September 30, 1960, it will include a requirement that the lessee operate said City Opera House without discrimination on the basis of

---

1. A third theatre is presently closed and is probably unusable without major repairs.

race, color or creed. It is understood, however, that this agreement is not a commitment on the part of the City to lease the said City Opera House after September 30, 1960, if the space is required for governmental or other proper municipal purposes." Counsel for plaintiffs proposed a form of decree, going somewhat beyond the resolution, to which counsel for the City was willing to agree with reasonable modifications, but Marva refused to agree to any injunction even if limited to a possible extension of the existing lease or a holding over after the present term.

During the period occupied by these discussions, Marva, through a newly-organized and wholly-owned subsidiary, Frederick Theatres, Inc., purchased the Tivoli Theatre and took over the lease of the other (closed) theatre. Marva has been refurnishing the Tivoli Theatre and intends to operate it and it alone after the beginning of the year 1960, and Marva has sought release from its obligations under the existing lease of the Opera House. The attitude of the theatre company and the resulting delays have caused plaintiffs to withdraw their offer to settle, and they now press for a decree in this action. Counsel for the City says that it will stand by the resolution of October 26, 1959, quoted above, but is considering using the Opera House for additional office space or other municipal purposes. Under these circumstances, plaintiffs are entitled to a decree declaring their rights.

In Department of Conservation & Development v. Tate, 4 Cir., 231 F.2d 615, 616, the Court said: "It is perfectly clear under recent decisions that citizens have the right to the use of the public parks of the state without discrimination on the ground of race. Dawson v. Mayor and City Council of Baltimore, 4 Cir., 220 F. 2d 386, affirmed 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774; Holmes v. City of Atlanta, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 776. And we think it equally clear that this right may not be abridged by the leasing of the parks with ownership retained in the state. See Lawrence v. Hancock, D.C., 76 F.Supp. 1004, 1009; Muir v. Louisville Park Theatrical Ass'n, 347 U.S. 971, 74 S.Ct. 783, 98 L.Ed. 1112. And it is no ground for abridging the right that the parks cannot be operated profitably on a nonsegregated basis."

In Derrington v. Plummer, 5 Cir., 240 F.2d 922, 925, certiorari denied 353 U.S. 924, 77 S.Ct. 680, 1 L.Ed.2d 719, where discrimination by a lessee operating a cafeteria in a county courthouse was enjoined, the court said: "No doubt a county may in good faith lawfully sell and dispose of its surplus property, and its subsequent use by the grantee would not be state action. Likewise, we think that, when there is no purpose of discrimination, no joinder in the enterprise, or reservation of control by the county, it may lease for private purposes property not used nor needed for county purposes, and the lessee's conduct in operating the leasehold would be merely that of a private person."

It is debatable whether this theatre could be considered surplus property, within the exception stated in Derrington. But a place of public assembly, a part of the City Hall, leased under an agreement which contemplated segregation, comes within the rule announced in Tate. Under the facts in this case, including the terms of the lease and of the exhibit attached thereto, the exclusion of Negroes from the main floor of the auditorium and the front of the balcony in the City Opera House and the maintenance of racially segregated toilet facilities therein violate the Fourteenth Amendment.

■ The action of the City has been so fair, in line with its fine traditions, that the court will not enter an injunction against it.

■ Plaintiffs have asked for an injunction so broad that the City would not be able to allow religious, social or fraternal groups to use the Opera House for a single day for their own purposes if they limit admission to members or other ticket holders. Frederick is not a large city, with the many private facilities available in metropolitan areas. Ra-

cial equality can be achieved without an injunction which prohibits any private meeting on public property at any time.

I had originally thought that there were equities in favor of allowing Marva to maintain its present arrangements until the end of the term of its lease, September 30, 1960, so that it might not be handicapped in recovering the investment it had made in repairing and improving the Opera House during the present lease. But Marva's recent actions have weakened those equities. I will issue an injunction against Marva Theatres, Inc., its officers, agents and employees, enjoining further discrimination by them on the property leased from the City.