W. F. (Dee) DERRINGTON and Harris County, Texas, acting herein by its County Judge and Commissioners, Appellants,

v.

M. W. PLUMMER et al., Appellees.

No. 16151.

United States Court of Appeals
Fifth Circuit.

Dec. 19, 1956.

Writ of Certiorari Denied April 1, 1957.

See 77 S.Ct. 680.

Madison Rayburn, Asst. County Atty., Sam R. Merrill, Burke Holman, County Atty., Houston, Tex., Frank L. Merrill, Fort Worth, Tex., for appellants.

Henry E. Doyle, Francis L. Williams, Houston, Tex., for appellees.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

RIVES, Circuit Judge.

The district court, upon a thoughtfully considered memorandum opinion,[1] permanently enjoined Harris County, Texas,

"from renewing or extending the present lease, or from executing a new lease, or otherwise divesting itself of management and control of the premises comprising the Courthouse cafeteria without specific assurances that facilities will be made available for the use of colored persons under circumstances and conditions substantially equal to those afforded members of the white race,"

and further enjoined the lessee Derrington,

"after ninety (90) days from December 29, 1955, from excluding members of the colored race from patronage in the said cafeteria solely by reason of their race or color under the circumstances here prevailing."

From that decree both Harris County and its lessee Derrington appeal.

The facts are mostly stipulated and entirely undisputed. A new courthouse for Harris County was completed in the summer of 1953. A part of the basement was planned for operation as a restaurant or cafeteria and was furnished and

---

1. Reported at Plummer v. Casey, D.C.S.D.Tex., 148 F.Supp. 326.

equipped by the County for such purpose. As the building neared completion, the County advertised for bids for the lease of such space. Derrington was the successful bidder.

The County leased to Derrington for a term beginning June 10, 1953 and ending December 31, 1954,[2]

> "* * * all of that certain space in the basement of the Harris County Court House in Houston, Harris County, Texas, known as the cafeteria space and being the room which is appropriately furnished and equipped for the operation of a cafeteria, together with the small rooms adjoining it which were built to be used in conjunction therewith."

The rental was admittedly adequate, 20% of the gross sales of the cafeteria or not less than $750.00 per month. The County agreed to provide water service, lighting, heating and air conditioning of the premises, and such water and electricity as is reasonably necessary to the conduct of the cafeteria business by Derrington. On his part, Derrington agreed to "operate a first class cafeteria", to "keep this cafeteria open at all such times as the Court House is open," to "abide by all Federal or State regulations as to policy, limitations on meals, food stuffs, drinks, etc., sold in this restaurant," and *not* to

> "permit in the demised premises any disorderly conduct or any conduct or practice in violation of any ordinance of the City of Houston or of any State or Federal Law, or of a sort likely to bring discredit upon Harris County or its Court House."

Employees of Harris County were to be given a 10% reduction in the price of foods and drinks "through the use of coupons or meal tickets or other means as may be determined by the Commissioners Court of Harris County."

The district court found and we agree that the original lease agreement "was in all respects a bona fide and arms length transaction, and entered into in compliance with all requirements of law."

On the trial, the County's attorney stated,

> "* * * that under Paragraph XIV of the lease as stipulated, that there is a renewal and optional agreement in there that would enable this man on five days' notice to renew and extend this particular lease."

It was in fact stipulated that before the execution of the renewal lease covering the term from January 1, 1955 through December 31, 1956.

> "* * * the said * * * Derrington had * * * timely and in the manner provided in said lease given said County notice of his intention to exercise his option to continue and renew said lease upon the same terms and provisions contained in the original lease."

The same paragraph XIV is contained in the second lease.[3]

There are numerous cafes and eating places for white people and for negroes within a five block radius of the courthouse.

During the original period of the lease, appellees undertook to purchase food in the cafeteria and Derrington refused

---

2. Subsequently renewed from January 1, 1955 through December 31, 1956, as hereafter detailed.

3. Paragraph XIV, as contained in each lease, reads as follows:
   "Lessee shall have the option of leasing and operating any other restaurant or cafeteria which the Lessor may elect to establish in the Harris County Court House, the Civil Courts Building, or any other building owned by Harris County lying within a one block area of said

Court House upon the same terms and conditions as set out in this instrument. After notice of intention to operate such a unit is given by Lessor to Lessee, Lessee shall have five (5) days within which to exercise such option. Thereafter Lessor may contract with any other person, corporation or firm concerning such unit."

Absent the stipulation, it is not clear to us that this is an option to renew the lease.

them permission solely because they were negroes. This class suit followed. Subsequently, the renewal lease was executed with knowledge on the part of both the County and Derrington that the suit raised issues of alleged violation of appellees' civil rights by reason of the denial to them of the use and benefit of the cafeteria. It was further stipulated that if the appellees or any other negroes were again to present themselves for service at the cafeteria,

"Derrington would contend it to be his right to refuse to serve plaintiffs and such members of the Negro race in a like manner for any reason, and would probably refuse to serve members of the Negro or colored race for the sole reason that they were members of the Negro or colored race."

■ The acts of racial discrimination, both those committed and those immediately in prospect, are the acts of Derrington, the lessee. Derrington's second lease expiring December 31, 1956, before our mandate can become effective, it might be, though it is not, contended that the case would thereby become moot. If Derrington does not have an option to renew his lease (see footnote 3, supra), it may be renewed by mutual agreement, or the County may lease to another who will practice like discrimination. Even if there had been a voluntary cessation of the alleged illegal conduct, the public interest in having the legality of the practice settled militates against a mootness conclusion in the absence of an affirmative showing that there is no reasonable expectation that the alleged wrong will be repeated. United States v. W. T. Grant Co., 345 U.S. 629, 632, 633, 73 S.Ct. 894, 97 L.Ed. 1303. See also United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 17 S.Ct. 540, 41 L. Ed. 1007; United States v. U. S. Steel Corp., 251 U.S. 417, 40 S.Ct. 293, 64 L. Ed. 343; Federal Trade Comm. v. Goodyear Tire & Rubber Co., 304 U.S. 257, 58 S.Ct. 863, 82 L.Ed. 1326; Walling v. Helmerich & Payne, 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29; United States v.

Oregon State Medical Soc., 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978.

On the merits the decisive question is whether the action of the lessee, Derrington, is merely private conduct or may fairly be said to be conduct of the County and thus State action within the inhibition of the Fourteenth Amendment. In re Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835; Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161.

■ No doubt a county may in good faith lawfully sell and dispose of its surplus property, and its subsequent use by the grantee would not be state action. Likewise, we think that, when there is no purpose of discrimination, no joinder in the enterprise, or reservation of control by the county, it may lease for private purposes property not used nor needed for county purposes, and the lessee's conduct in operating the leasehold would be merely that of a private person. Those principles do not, however, control the decision of this case for several reasons.

■ Assuming no purpose of discrimination on the part of the County in the renewal of the lease, and further assuming no express reservation of control by the terms of the lease to prevent discrimination, neither of which assumptions is beyond question, and pretermitting the legal effect of the County's furnishing water, electricity, heating and air conditioning services to its lessee, the basement of the courthouse can by no means be termed surplus property not used nor needed for County purposes. To the contrary, the courthouse had just been completed, built with public funds for the use of the citizens generally, and this part of the basement had been planned, equipped and furnished by the County for use as a cafeteria. Without more justification than is shown in this case, no court could countenance the diversion of such property to a purely private use.

Further, the express purpose of the lease was to furnish cafeteria service for the benefit of persons having occasion to be in the County Courthouse. If

the County had rendered such a service directly, it could not be argued that discrimination on account of race would not be violative of the Fourteenth Amendment. The same result inevitably follows when the service is rendered through the instrumentality of a lessee; and in rendering such service the lessee stands in the place of the County. His conduct is as much state action as would be the conduct of the County itself. Muir v. Louisville Park Theatrical Association, 347 U.S. 971, 74 S.Ct. 783, 98 L.Ed. 1112, reversing 6 Cir., 202 F.2d 275, which had affirmed D.C.W.D.Ky., 102 F.Supp. 525; Department of Conservation & Development v. Tate, 4 Cir., 231 F.2d 615, affirming D.C.E.D.Va., 133 F. Supp. 53; Lawrence v. Hancock, D.C.S. D.Va., 76 F.Supp. 1004; compare Nash v. Air Terminal Services, D.C.E.D.Va., 85 F.Supp. 545; see also City of St. Petersburg, etc. v. Alsup, 5 Cir., 238 F. 2d 830.

The judgment is therefore

Affirmed.