H. D. COKE

v.

CITY OF ATLANTA, GA., a Municipal Corporation of the State of Georgia and County of Fulton, William B. Hartsfield, Mayor of said City of Atlanta, Jack Gray, Terminal Manager of the Atlanta Airport Terminal, Dobbs Houses, Inc., a Corporation organized and existing under the laws of the State of Tennessee; B. F. Buttrey, Manager of Dobbs Houses, Inc., Restaurant at the Atlanta Airport Terminal.

Civ. A. No. 6733.

United States District Court
N. D. Georgia,
Atlanta Division.

Jan. 5, 1960.

580

Donald L. Hollowell, Atlanta, Ga., Thurgood Marshall, Jack Greenberg, New York City, Peter A. Hall, Birmingham, Ala., for plaintiff.

J. C. Savage and Newell Edenfield, Atlanta, Ga., for City of Atlanta, Hartsfield and Gray.

Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for Dobbs Houses, Inc., and Buttrey.

SLOAN, District Judge.

Plaintiff, a Negro man, a citizen and resident of the State of Alabama and City of Birmingham, on behalf of himself and others similarly situated, brings this complaint seeking injunctive relief. The defendants are the City of Atlanta, its Mayor, its Airport Manager, Dobbs Houses, Inc., and the Manager of the Dobbs Houses, Inc., Atlanta Airport Restaurant.

Briefly, plaintiff alleges that while an interstate passenger from Birmingham, Alabama to Columbus, Ohio, he had to change planes in Atlanta; that his connecting plane was late and that Delta Air Lines issued to him and other passengers

Meal Authorization Tickets directed to Dobbs Houses, Inc. and directed plaintiff and his party to secure their meal at the restaurant of Dobbs Houses, Inc., in the Atlanta Airport Terminal.

Plaintiff contends that he and other passengers entered the Dobbs Houses Restaurant and that plaintiff was refused service at a table of his choice and that the hostess directed him to a single corner table which was segregated behind a screen for the purpose of serving Negroes and refused to serve plaintiff on the same basis as white passengers.

Plaintiff contends that the Dobbs Houses, Inc. restaurant in the Atlanta Airport Terminal is located on property belonging to the City of Atlanta and that the restaurant is subject to the supervision and control of the city and its agents. Plaintiff contends that the refusal to serve him on the same basis as white passengers was a denial of plaintiff's rights guaranteed by the equal protection clause of the Fourteenth Amendment to the United States Constitution and that the same constitutes a burden on interstate commerce which is forbidden by Article I, Section 8 of the United States Constitution.

Plaintiff seeks an injunction restraining defendants from making any distinction based upon color in regard to services at the Atlanta Airport Terminal or the restaurant therein.

It is the contention of the City of Atlanta, its Mayor and Airport Manager that the space in the Airport Terminal which is occupied by Dobbs Houses, Inc. for its restaurant is leased to Dobbs Houses, Inc. and that the lease does not give the City the right to control the operation of the restaurant and that it has at no time controlled or sought to control the operation of the restaurant.

It is the contention of Dobbs Houses, Inc. that it is a private corporation and that it simply leases the space in which the restaurant is located and that the City of Atlanta does not have the right to control nor has it attempted to control the operation of the restaurant.

Dobbs Houses, Inc. contends that it employed its manager, Mr. Buttrey, and that the segregation, if it amounts to segregation in the dining room, is the result of its manager's own discretion without direction or control from the corporation or from the City of Atlanta and was dictated by his judgment that it was good business to maintain separate seating for white and Negro patrons and that the failure to maintain separate seating would cause in that restaurant a loss of patronage and decreased revenue.

Findings of Fact

1. Plaintiff, a Negro man, was and is a citizen and resident of the State of Alabama and the City of Birmingham, and is a vice-president and agency officer of the Protective Industrial Insurance Company of Alabama. This company operates and has agents only in the State of Alabama. Plaintiff's business requires some travel and he has occasion to pass through the Atlanta Airport from one to four times a year.

2. On August 4, 1958, plaintiff was en route from Birmingham, Alabama, to Columbus, Ohio, to attend an insurance convention.

Upon arrival in Atlanta at the airport terminal, plaintiff went to the office of Delta Air Lines to arrange for a change over from Eastern Air Lines to Delta Air Lines. At that time, plaintiff was informed by an agent of Delta that his plane would be late and that he would not be able to get a meal on the plane and the Delta agent gave to plaintiff a meal ticket and directed him to carry the meal ticket to the Dobbs Houses restaurant in the airport terminal for the purpose of being served a meal.

Plaintiff accompanied by two companions entered the Dobbs Houses restaurant and selected a table near the center of the restaurant and as they were about to seat themselves, the hostess approached and told them not to take seats at the table they had chosen, that they would have to be seated at a "table reserved for your people." This table was in one corner of the restaurant and was

separated from the other tables by a screen. Plaintiff then asked the hostess why they must sit at the table behind the screen and the hostess replied that she had been "instructed by the management." Plaintiff then asked for the manager and was told that he was not there.

Plaintiff and his companions refused to sit at the table designated by the hostess, whereupon the hostess told them they could be served at a cafeteria located outside the terminal building, but nearby, which the hostess pointed out to plaintiff and his companions. The hostess informed plaintiff that the same food served in the restaurant would be served in the cafeteria but the prices in the cafeteria would be cheaper. Plaintiff and his companions refused to go to the cafeteria for service there and returned to the office of Delta Air Lines where plaintiff reported to the agent that he had been refused service at the Dobbs Houses restaurant. The Delta agent looked at plaintiff's meal ticket, told him there had been a mistake in that the authorized meal should have been $1.75 rather than $1.50 and made this change on the meal ticket and instructed plaintiff to return to the Dobbs Houses restaurant and assured plaintiff that he could obtain his meal there. Plaintiff and his companions then returned to the Dobbs Houses and were about to enter when the headwaiter met them and advised them not to enter the restaurant unless they were willing to sit at the table reserved for Negroes behind the screen, whereupon plaintiff and his companions did not again enter the Dobbs Houses restaurant.

3. There is constant use of the Atlanta Airport Terminal facilities by Negroes. The Henderson Travel Service, located in the City of Atlanta, has a clientele, the major portion of which are Negroes and in an eleven-month period from January 1, 1959 to November 30, 1959, sold airplane tickets amounting to $82,683.85 which figure does not include sales purchased by the use of credit cards. The major portion of these tickets were purchased by Negroes for interstate travel. A spot survey at the Atlanta Municipal Airport between November 20, 1959 and December 1, 1959, showed the following count of Negro persons that were seen utilizing the facilities of the Atlanta Airport Terminal:

November 20, 1959—1:30 to 4:30 P. M., 19.

November 23, 1959—3:30 to 5:30 P. M., 13.

November 30, 1959—6:40 A.M. to 10:40 A.M., 22.

4. The restaurant of Dobbs Houses, Inc. located in the airport terminal in Atlanta is open to the public generally and anyone who wishes to do so may patronize the restaurant but Mr. Buttrey, as manager of the Dobbs Houses, Inc. restaurant, determined that, for business reasons, segregation of the races would be maintained in the Dobbs Houses restaurant. This policy of segregation was that if the Negroes wanted to eat in the restaurant they would be seated at a table or tables reserved for Negroes which were separated from the other tables in the restaurant by a screen.

5. Dobbs Houses, Inc., nor its manager, at no time received any instructions or directions from the City of Atlanta; Mr. Gray, the manager of the airport; or any one else connected with the city, on the subject of segregation of Negroes within the restaurant. The decision to segregate Negroes from white customers within the restaurant was solely the decision of the management of Dobbs Houses, Inc. It was the opinion of the manager that such segregation was for the best business interest of his company and would actually be for the protection of Negroes in that it might save them embarrassment. The City of Atlanta had nothing to do with this decision and has never undertaken to exercise any control over the restaurant of Dobbs Houses, Inc.

6. The City of Atlanta owns the municipal airport. The City of Atlanta, through a manager and other employees, operates the airport and the terminal building. It leases space in the terminal

building from which it received a revenue of $523,599.30 for the year 1958.

7. The terms under which Dobbs Houses, Inc. occupies space in the Atlanta Airport Terminal are defined by a lease from the City of Atlanta to Dobbs Houses, Inc., referred to in plaintiff's complaint appearing in evidence as Plaintiff's Exhibits 1 and 2.

The lease describes the space leased to Dobbs Houses, Inc. for the restaurant concession as being " * * * certain space on the first floor of the new passenger terminal building located on the above described municipal airport, marked 'restaurant concession' on 'Exhibit A' attached hereto and made a part hereof."

This lease provides, inter alia, that Dobbs Houses, Inc. shall pay a minimum rental of $1,500 per month plus 6% of gross sales where such percentage exceeds the sum of $1,500 per month. The average monthly rentals coming from Dobbs Houses, Inc. to the City of Atlanta from January 1, 1959 to July 1, 1959, was §17,805.60. The lease does not reserve to the city the right to control the operation of the restaurant, nor has the city, in fact, controlled or undertaken to control the operation of the restaurant. The lease does provide that Dobbs Houses, Inc. shall render prompt service to the patrons of the airport. The only right to control reserved by the lease contract as to the manner and method of operating any of the concessions leased to Dobbs Houses, Inc. is contained in Article H(2) providing that "Dobbs shall submit to the manager of the airport, if requested, a schedule of articles and commodities proposed to be offered for sale at the tobacco and newsstands and the gift shop, and the prices proposed to be charged therefor and only articles or commodities having the approval of the manager of the airport shall be sold or offered for sale." This provision applies only to the newsstand and gift shop and does not apply to the restaurant. In addition to the space for the restaurant, Dobbs Houses, Inc. also leases space wherein it conducts a snack bar, a newsstand and a gift shop.

The lease imposes various requirements upon the lessee, but nowhere does it give the city the right to control the operation of the restaurant.

The right of the city in the event of default is to cancel the lease.

Conclusions of Law

1. This Court has jurisdiction of this cause by virtue of the provisions of Title 28 U.S.C. § 1343 and Title 42 U.S.C.A. § 1983.

2. This Court is bound by the decisions of the Supreme Court of the United States and by the decisions of the United States Court of Appeals for the Fifth Circuit.

3. When a provision of the Constitution or a law has been construed or declared by either the Supreme Court or the United States Court of Appeals for this circuit, this Court is not thereafter free to construe or declare such provisions of the Constitution or law differently even though this Court should believe it should be differently construed or declared, but is bound by the decisions of such courts.

4. The complaint states a proper case for class action. The suit is one for interference with plaintiff's alleged rights as a Negro citizen and he may properly sue on behalf of all other Negro citizens since they all have an identity of interest in having access to the restaurant on a non-segregated basis. Evers v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L. Ed.2d 222; Sharp v. Lucky, 5 Cir., 252 F. 2d 910, 913; Derrington v. Plummer, 5 Cir., 240 F.2d 922.

5. The decisive question presented here is:

Whether the action of the lessee, Dobbs Houses, Inc., may fairly be said to be the conduct of the City of Atlanta and thus state action.

6. If this question is answered in the affirmative, it is under the teaching of Ex parte Commonwealth of Virginia, 100 U.S. 339, 347, 25 L.Ed. 676, state action inhibited by the first section of the Fourteenth Amendment.

**7.** If this question is answered in the negative, then the action of Dobbs Houses, Inc. is merely private conduct and however discriminatory or wrongful it may be is not action inhibited by the Fourteenth Amendment. Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161; Williams v. Howard Johnson's Restaurant, 4 Cir., 268 F.2d 845.

8. The defendant, City of Atlanta, contends that the municipality in owning and operating the municipal airport was acting in a proprietary capacity and not in a governmental capacity and that its acts are not state action.

This question has been decided adversely to this defendant's contention by the United States Court of Appeals for the Fifth Circuit in City of St. Petersburg v. Alsup, 238 F.2d 830.

9. The defendants further contend that the city had executed to Dobbs Houses, Inc. a valid lease to the space in the Atlanta Airport Terminal where the restaurant is operated with no purpose of discrimination, no joinder in the enterprise or reservation of control by the city, and that the acts of Dobbs Houses, Inc. are not the acts of the City of Atlanta, but is merely private conduct of Dobbs Houses, Inc., a private corporation.

This question has seemingly been decided adversely to the defendants' contentions by the United States Court of Appeals for the Fifth Circuit in the case of Derrington v. Plummer, 240 F.2d 922, 925(4).

10. It is the contention of the defendants however, that under the facts here, this case comes within the exception recognized in Derrington v. Plummer, supra, wherein the court in that case said:

"No doubt a county may in good faith lawfully sell and dispose of its surplus property, and its subsequent use by the grantee would not be state action. Likewise, we think that, when there is no purpose of discrimination, no joinder in the enterprise, or reservation of control by the county, it may lease for private purposes property not used nor needed for county purposes, and the lessee's conduct in operating the leasehold would be merely that of a private person."

Assuming no purpose of discrimination on the part of the city here and further assuming no joinder in the enterprise and no express reservation of control by the terms of the lease, in order to bring this case within the above quoted exception in Derrington v. Plummer, supra, this Court must find that the leased space was not used or needed for city purposes.

The lease contract itself describes the space leased to Dobbs Houses, Inc. referred to as "restaurant concession" as being " * * * certain space on the first floor of the new terminal building located on the above described municipal airport * * * for the conduct, operation and maintenance of a dining room, kitchen, storeroom, etc. * * *".

In Derrington v. Plummer, supra, the Court said:

"* * * the basement of the courthouse can by no means be termed surplus property not used nor needed for County purposes. To the contrary, the courthouse had just been completed, built with public funds for the use of the citizens generally, and this part of the basement had been planned, equipped and furnished by the County for use as a cafeteria. Without more justification than is shown in this case, no court could countenance the diversion of such property to a purely private use.

"Further, the express purpose of the lease was to furnish cafeteria service for the benefit of persons having occasion to be in the County Courthouse. If the County had rendered such a service directly, it could not be argued that discrimination on account of race would not be violative of the Fourteenth Amendment. The same result inevitably follows when the service is rendered through

the instrumentality of a lessee; and in rendering such service the lessee stands in the place of the County. His conduct is as much state action as would be the conduct of the County itself."

11. Under the facts in this case the Court holds that the conduct of Dobbs Houses, Inc. is as much state action as would be similar conduct of the City of Atlanta itself and that the discrimination practiced by Dobbs Houses, Inc. in refusing to serve Negroes except upon a segregated basis is violative of plaintiff's rights as a Negro citizen under the equal protection provision of the Fourteenth Amendment. Plaintiff is entitled to the injunctive relief as prayed.

A judgment in conformity with the findings and conclusions here made may be prepared and presented.

On Motion to Dismiss

At the conclusion of all the evidence in the above stated case, a motion was made to dismiss the complaint as to William B. Hartsfield, Mayor of City of Atlanta; B. F. Buttrey, Manager of Dobbs Houses, Inc. Restaurant at the Atlanta Airport Terminal; and Jack Gray, Terminal Manager of the Atlanta Airport Terminal, on the ground that there was no evidence of any wrongful act on the part of the named individual defendants. The Court took this motion under advisement, now:

A director, officer or agent is not liable for torts of the corporation or of other officers or agents merely because of his office. He is liable for torts in which he has participated or which he has authorized or directed.[1]

The liability of the agent of the corporation for individual conduct in his capacity as agent must rest upon the breach of the duty owing to the plaintiff imposed upon him by law as a responsible individual in common with all other members of society. He cannot be held personally liable for the breach of a duty which is imposed only upon his principal and upon him merely by virtue of his relation.[2]

The action inhibited by the first section of the Fourteenth Amendment is state action.[3] And it does not reach merely private conduct, however discriminatory or wrongful it may be.[4]

The motion to dismiss as to these individual defendants is sustained and the complaint is dismissed as to William B. Hartsfield, Mayor of City of Atlanta; B. F. Buttrey, Manager of Dobbs Houses, Inc. Restaurant at the Atlanta Airport Terminal; and Jack Gray, Terminal Manager of the Atlanta Airport Terminal.

---

1. 19 C.J.S. Corporations § 845, p. 271.
2. Southern Railway Co. v. Grizzle, 124 Ga. 735, 737, 738, 53 S.E. 244.
3. Ex parte Commonwealth of Virginia, 100 U.S. 339, 25 L.Ed. 676.
4. Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161.