N. H. SMITH, Jr., et al., Plaintiffs,

v.

CITY OF BIRMINGHAM, ALABAMA, et al., Defendants.

Civ. A. No. 10212.

United States District Court
N. D. Alabama, S. D.

Dec. 12, 1963.

Oscar W. Adams, Jr., Birmingham, Ala., and Ernest D. Jackson, Sr., Jacksonville, Fla., for plaintiffs.

William G. West, Jr., and the firm of Sirote, Permutt, Friend & Friedman, Birmingham, Ala., for Airway Motel, Inc.,

J. M. Breckenridge, Birmingham, Ala., for the City of Birmingham.

GROOMS, District Judge.

Plaintiffs, four Negro citizens of Birmingham, Alabama, and a Negro citizen of Kentucky, are here suing individually and on behalf of all colored citizens similarly situated for declaratory and injunctive relief. The defendants are the Mayor and members of the Council of the City of Birmingham, who have been substituted for the members of the former City Commission, the members of the Library Board of the City, and the Airway Motel, Inc., a corporation. Plaintiffs claim illegal discrimination in the use and enjoyment of the facilities at the City Hall, at the central library and its several branches, and at the Airport Motel. This action was instituted on July 10, 1962.

## FINDINGS OF FACT

The court finds that:

1. By election of the people of the City of Birmingham, held in November, 1962, the form of Government of the City was changed from Commission to Mayor-Council. The Mayor and the Councilmen were sworn into office on April 15, 1963, but their right to hold office was contested and from that date until May 23, 1963, Commissioners on one hand and the new officers on the other occupied office space at the City Hall, each claiming to represent the legal governing body of the City. The controversy was resolved in favor of the Mayor and Council by the Supreme Court of Alabama on May 23, 1963. Connor, et al. v. State on Information of Boutwell, 275 Ala. 230, 153 So.2d 787.

2. On July 23, 1963, the Council repealed Sections 369, 1110 and 1111 of the City Code of 1944, here complained of, as well as all other ordinances relating to segregation of the races, and shortly thereafter all signs denoting separate toilets, washrooms, drinking fountains and rest areas for the use of Negroes were removed, and according to the affirmative evidence offered upon the trial neither the Mayor nor the Council has in any way at any time discriminated against any citizen because of his race or color.

3. On April 10, 1963, twelve Negro students staged a sit-in demonstration at the central library. They were permitted to, and did, remain at the library some forty-five minutes and left voluntarily. On the following day the Library Board approved the action of the Director in serving the demonstrators and directed that no person be excluded from the use of public library facilities except for violation of the rules and regulations.[1] Since that date Negroes have used, and are using, all library facilities on an equal basis with others.

4. No illegal racial discrimination has been, or is being, practiced by the Mayor or Council or others under their authority in the use of the facilities at the City Hall, or by the Library Board, its members, or others under their authority in the use of the library facilities of the City.

5. The Airport Motel is operated by the defendant Airway Motel, Inc., under a lease executed on August 2, 1960. This lease has been four times amended in one or more particulars. As amended it provides for an original term of twenty-five years with options to renew for one additional ten-year term and one five-year term. Rent is based upon a varying percentage of receipts from room rental, restaurant, bar and miscellaneous.

6. The City of Birmingham owns the land upon which the motel is located. This land is a part of the Birmingham Municipal Airport. The motel is located directly in front of the main entrance to the airport terminal approximately seventy-five feet removed therefrom. There is a marquee extending between the terminal entrance and that of the motel, but it is not directly attached to either. Airway Motel, Inc., built and equipped the motel. No public funds of any kind went into the structure or its equipment.

1. These contain no provision for the segregation of the races in the use of the facilities.

7. Under the terms of the lease it is provided that:

"All improvements and additions to the leased premises shall adhere to the leased premises and become a part thereof and shall immediately become the property of (the) City." Sec. 18.

"Nothing herein contained shall be construed as conferring any rights or privileges of ownership in (the) Motel of the demised premises or the improvements to be constructed thereon, Motel being granted hereby only a proprietary interest and lease- hold estate in accordance with the terms, covenants and conditions set forth herein, and that title to all structures and improvements shall remain vested in the City." Sec. 30.

8. The Motel is granted a city ad valorem tax exemption, but is subject to all municipal occupational licenses or other similar licenses. The improvements are assessed for State and County ad valorem taxes. Other pertinent provisions of the lease are summarized below.[2]

9. The defendant Airway Motel, Inc., has concededly practiced racial discrimi-

2. The lease provides for the approval of construction plans and specifications by the City and grants the City the right of disapproval not only as to the original construction but as to any subsequent improvements. The City is granted the right to veto or prohibit any enlargement or addition to the motel building. Motel covenanted with the City that it will conduct and operate upon the leased premises a first-class motel, bar and cocktail lounge, with the further right to operate a restaurant and kitchen and that it will keep and maintain on the premises only first-class, modern equipment and that it will so conduct its motel as to insure prompt, efficient and courteous service to patrons and customers, will keep the motel open 24 hours a day and will operate the restaurant at all hours at which there may be a reasonable, probable and substantial demand for restaurant services by the guests at the motel.

Motel granted to the City and its representatives reasonable access to all books, records, accounts and reports, including all tax returns, and agreed to permit the City to examine the same, to keep such records for a period of five years. Motel agreed also to maintain at its own expense fire and extended coverage insurance with the City as loss payee, to deliver the original of all policies to the City and not to cancel said policies without 30 days prior written notice to the City. Motel also agreed to deliver the original of all liability insurance policies to the City and agreed not to cancel same except upon prior written notice. The amount of liability insurance that Motel would carry is prescribed in the lease.

Agents, servants and employees of the City are authorized to enter the leased premises at reasonable hours to examine and inspect the same. Motel agreed to keep the premises in a good state of repair, not to commit waste, to abide by all valid ordinances and laws of the United States, the State of Alabama, and the City of Birmingham. Its employees are likewise required to comply with all health laws and regulations while on the premises. The premises are to conform to all such laws and regulations.

Motel agreed to adopt a schedule of charges for the various services and accommodations offered by it and delivered to the City five copies of the first such schedule and copies of changes thereafter made in the schedule. Motel agreed that its charges would be consistent with charges generally imposed for similar services elsewhere, to employ competent, courteous and efficient help and to furnish a skilled and responsible manager.

The City agreed with Motel that during the terms of the lease it would not lease any land upon the Birmingham Municipal Airport to any other lessee or tenant for use as a motel, or permit any other lessee to operate in violation of its lease any business which would be in competition with the rental of rooms by Motel.

Motel agreed to keep the premises clean, sanitary and safe and to keep the entire interior airconditioned during warm months and adequately heated during cool months, to obey and observe all airport rules and regulations pertaining to the operation of the airport, to use its best efforts not to permit parking of any automobile on the leased premises other than automobiles of guests. The City granted Motel the right to supply certain free lodging and food where doing so might be instrumental in enhancing the business of the motel for the mutual benefit of the City and Motel.

The lease contains forty-four sections and is twenty-five pages in length.

nation in the use and enjoyment of the motel and its facilities. The land on which the motel is located is not shown to be surplus property and taking into account its location and the fact that it is a part of the Municipal Airport, it can hardly be contended that it is surplus property. Such racially discriminatory action falls within the prohibitive scope of the Fourteenth Amendment, and cannot be properly characterized as purely private action.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of this cause and the parties thereto. Jurisdiction is properly invoked under Title 28 U.S.C. § 1343, Title 42 U.S.C.A. § 1983, Title 28 U.S.C. §§ 2201–2202, Title 28 U.S.C. § 1331, and the Fourteenth Amendment to the Constitution of the United States. The suit is properly brought as a class action under Rule 23 (a) (1), Federal Rules of Civil Procedure.

■ 2. Racial discrimination in the use and enjoyment of any of the facilities of the City of Birmingham which are open to the public, whether under ordinance, policy, custom or usage, is violative of the equal protection provision of the Fourteenth Amendment. Anderson v. City of Albany, 5 Cir., 321 F.2d 649; Shuttlesworth v. Gaylord, D.C.N.D.Ala., 202 F.Supp. 59, and numerous cases cited in footnote 2 of that case. There is no present or prospective threat of any illegal racial discrimination in the use and enjoyment of the facilities at the City Hall or in the use of the City's library facilities.

■ 3. "[P]rivate conduct abridging individual rights does no violence to the Equal Protection Clause *unless to some significant extent the State in any of its manifestations has been found to have become involved in it.*" (Emphasis supplied) Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45. Taking into account the fact that the City owns the land on which the motel is located, that the land is a part of the Municipal Airport, that the City has title to all improvements made by the lessee, the location of the motel with respect to the main airport terminal, the purposes for which the motel was constructed, the many reservations contained in the lease and the mutual interests to be served by the lease arrangement, the action of the lessee in discriminating against Negroes in the rendition of service at the motel is State action within the inhibition of the Fourteenth Amendment.

Assuming that the exception stated in Derrington v. Plummer, 240 F.2d 922 (5 Cir. 1956)[3], has survived the impact of the later decisions, a city may within the narrow limits of the exception lease its surplus property not needed for city purposes without its action being held to be State action. The court is of the opinion, however, that this case falls without the exception and under the general rule that facilities owned and leased by a city when open to the public must be open equally on an identical basis to all members of the public regardless of race.[4]

3. "No doubt a county may in good faith lawfully sell and dispose of its surplus property, and its subsequent use by the grantee would not be state action. Likewise, we think that, when there is no purpose of discrimination, no joinder in the enterprise, or reservation of control by the county, it may lease for private purposes property not used nor needed for county purposes, and the lessee's conduct in operating the leasehold would be merely that of a private person."

4. Burton v. Wilmington Parking Authority, supra (lease of a restaurant in an auto parking building owned and operated by a state agency); Muir v. Louisville Park Theatrical Association, 347 U.S. 971, 74 S.Ct. 783, 98 L.Ed. 1112, vacating 6 Cir., 202 F.2d 275 (lease of an amphitheater located in a public municipal park); Turner v. Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (municipal airport restaurant operated under a lease from the city). Also Coke v. City of Atlanta, 184 F.Supp. 579 (N.D.Ga.); Brooks v. City of Tallahassee, N.D.Fla., 202 F.Supp. 56; and Adams v. City of New Orleans, E.D.La., 208 F.Supp. 427, aff'd, 5 Cir., 321 F.2d 493 (involving

Racial discrimination in the use of the motel facilities is impermissible.

4. Plaintiffs are entitled to injunctive relief as to Airway Motel, Inc., but not as to the other defendants. Judgment accordingly.

leases of restaurants in airports); Derrington v. Plummer, supra, cert. denied, 353 U.S. 924, 77 S.Ct. 680, 1 L.Ed.2d 719 (a lease of a courthouse cafeteria by the County); City of Greensboro v. Simkins, 4 Cir., 246 F.2d 425 (the lease of a city golf course); Tate v. Department of Conservation and Development, E.D.Va., 133 F.Supp. 53, aff'd, Department of Conservation and Development Division of Parks Com. of Va. v. Tate, 4 Cir., 231 F.2d 615 (lease of state park); Lawrence v. Hancock, S.D.W.Va., 76 F.Supp. 1004 (lease of municipal swimming pool); and Jones v. Marva Theatres, Inc., D.C.Md., 180 F.Supp. 49 (lease of a theater located in the City Hall).