Ralph M. WIMBISH, Fred W. Alsup and Alphonso Mitchell, Appellants,

v.

PINELLAS COUNTY, FLORIDA, et al., Appellees.

No. 21494.

United States Court of Appeals
Fifth Circuit.

Feb. 23, 1965.

Fred G. Minnis, St. Petersburg, Fla., Frank H. Heffron, Jack Greenberg and Constance Baker Motley, New York City, for appellants.

William E. Allison, St. Petersburg, Fla., Page S. Jackson, Clearwater, Fla., for appellees.

Before TUTTLE, Chief Judge, RIVES, Circuit Judge, and DYER, District Judge.

RIVES, Circuit Judge.

Defendant Pinellas County, Florida, leased certain of its undeveloped lands, which are adjacent to the County airport but not used for any part of the airport or for any other County purpose, to defendant Airco Golf, Inc., a Florida corporation. Defendant Airco Golf, Inc., as lessee, was obligated to use the premises only for a golf course, and it agreed to develop the property for that purpose and to construct, maintain and operate a regulation golf course thereon. The district court found that the plaintiffs were denied the right to play golf on the said golf course by the management solely because the plaintiffs were Negroes, while at the same time white persons have been permitted to play golf on the course. The primary question on appeal is whether the action of defendant Airco Golf, Inc., in denying the plaintiffs the use of the golf course, because of their race, is "state action" and thus prohibited by the Equal Protection Clause of the Fourteenth Amendment to the Constitution. The district court held that the operation of the golf course was not "state action" and dismissed the plaintiff's complaint, which requested an injunction enjoining the defendants from denying the plaintiffs and others similarly situated the right to use the golf course, solely on account of their race.

The defendants argue that since there was no purpose of discrimination or res-ervation of control which could in any way authorize Pinellas County to require the corporation to follow any particular policy with respect to discrimination[1] and that since the operation of the golf course was not an integral part of a public facility,[2] the action of Airco Golf, Inc., was not that of Pinellas County, and through it the State of Florida.

To fashion and apply a precise formula for recognition of state responsibility under the Equal Protection Clause is an "impossible task" which the Supreme Court has never attempted. "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Authority, 1961, 365 U.S. 715, 722, 81 S.Ct. 856, 860. We have noted that "when there is no purpose of discrimination, *no joinder in the enterprise,* or reservation of control by the county, it may lease for private purposes property not used nor needed for county purposes, and the lessee's conduct in operating the leasehold would be merely that of a private person." Derrington v. Plummer, 5 Cir. 1956, 240 F.2d 922, 925. (Emphasis supplied.)

Pinellas County executed the lease on July 18, 1961. The initial term was for twenty-five years with the right of renewal for an additional fifteen years. The lease provides that the "demised premises shall be used only for the construction and operation of a golf course and related facilities and the Lessee agrees to place improvements on said premises for said purposes." The plans and specifications for all improvements constructed on the premises must be submitted to and approved by Pinellas County and title to all improvements made on the property vests in the County. The prices charged for golf fees "shall not be reasonably less than or reasonably greater than prices which are customary and reasonable in the trade for compara-

1. See Hampton v. City of Jacksonville, 5 Cir. 1962, 304 F.2d 320, 331 (concurring opinion).

2. See Burton v. Wilmington Parking Authority, 1961, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45; Derrington v. Plummer, 5 Cir. 1956, 240 F.2d 922.

ble merchandise, service and facilities." The prices are subject to the approval of Pinellas County and are subject to review at any time by the County. Airco Golf, Inc., is required to establish daily memberships or green fees so that the use of the facilities will not be confined to persons holding memberships for a longer term. By these provisions we think the County has joined in the golf-course enterprise to such an extent that the Equal Protection Clause must be applied to Airco Golf, Inc.'s conduct in operating the leasehold.

The defendants contend that the execution of the lease was for additional revenue and not for the operation of a golf course and that the right of the County to approve green fees and audit the books enables the lessor to know what rent is due. And the district court found that the restriction of the leasehold to use as a golf course could well be to prevent hazards to air navigation since it was located adjacent to the County's airport. We think the reasons given for the various lease provisions show that the County had no purpose of discrimination in the execution of the lease. It does not follow, however, that the County is any less involved in the operation of the golf course because its reasons for the lease provisions are good faith ones. Although the execution of the lease was not for the purpose of promoting discrimination, "it is of no consolation to an individual denied the equal protection of the laws that it was done in good faith. Certainly the conclusions drawn in similar cases by the various Courts of Appeals do not depend upon such a distinction." Burton v. Wilmington Parking Authority, 1961, 365 U.S. 715, 725, 81 S.Ct. 856, 861 (Footnote omitted.)

 The defendants contend that there is no competent evidence in the record sufficient to support the finding of the district court that Negroes were excluded from the golf course because of their race. Rule 52(a) of the Federal Rules of Civil Procedure provides that "findings of fact shall not be set aside unless clearly erroneous * * *."

A finding of fact may be set aside as "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746. However "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.P. 52(a). On Sunday, October 7, 1962, when Negroes predominantly were playing, a number of players were delayed too long and a number of players failed to play the holes in regular sequence. The defendants contend that the Negro plaintiffs were denied access to the course not because they were Negroes but because they were on the list of players who played on that Sunday in October 1962. However, there was much testimony from which the district court might properly find that Negroes were excluded from the golf course because of their race. As examples of such evidence we recite a couple of items. Frank Peterson testified that he sought to play a few days after October 7, 1962 and was told by the person in charge that "the policy of the golf course was that no colored people could play out there until further notice." The district court noted that the treasurer of Airco Golf, Inc., who was also a board member, announced that Negroes would no longer be allowed to play at the course. He gave a statement to the press which said:

> "They're not going to play. We tried to put the course out there for them. We thought it would work out. But now we have taken the 'public' off our sign and have made it a private golf club.

> "The first day we were open we had four Negroes drive up in a Miami-licensed car and play. They insisted on using a restroom which hadn't even been hooked up for plumbing."

We cannot say that the findings of the district court are clearly erroneous. The

judgment of the district court is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.