Sally **HADNOTT**, James Harris, Celeste Williams, Julia Bell Debarlabor, Jessie Harris, Joe Durden, Dollie Hutchinson, Lurleen Douglase, Inell Rawlinson, individually and in behalf of their families, and in behalf of all those similarly situated, Plaintiffs,

v.

**CITY OF PRATTVILLE**, Alabama; C. M. Gray, individually and in his capacity as Mayor of the City of Prattville, Alabama; W. H. Brewer, W. C. Godwin, Ed S. Gray, Tom Kennedy, and W. M. McHearg, individually and in their capacity as Councilmen of the City of Prattville, Alabama, Defendants.

Civ. A. No. 2886–N.

United States District Court,
M. D. Alabama, N. D.

Feb. 2, 1970.

quemines, filed 7 May 1969; Vincent v. Lilliman, et al., No. 11–675, 25th Jud. Dist.Ct., Parish of Plaquemines, filed 26 November 1968.

Solomon S. Seay, Jr., Gray, Seay & Langford, Montgomery, Ala., Ronald F. Pollack and Lee A. Albert, New York City, Center on Social Welfare Policies and Law, Melvyn R. Leventhal, Jackson, Miss., N.A.A.C.P. Legal Defense and Educational Fund, Inc., for plaintiffs.

Joseph D. Phelps, Hill, Robison, Belser & Phelps, Montgomery, Ala., and T. O. McDowell, Jr., Prattville, Ala., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHNSON, Chief Judge.

This is a proceeding for injunctive relief brought by the plaintiffs, pursuant to Rule 23 of the Federal Rules of Civil Procedure, in their own behalf and in behalf of other Negro residents of Prattville, Autauga County, Alabama, who are similarly situated. The plaintiffs ask this Court to restrain defendants from continuing a policy, practice, custom, and usage of providing municipal facilities and services on a discriminatory basis, and to require defendants to remedy the effects of their past policy and practice in this respect. The defendants are the City of Prattville, Alabama, organized and existing under the laws of the State of Alabama, Code of Alabama, Title 37, Section 1 et seq., the Mayor, and the individual councilmen for the City.

The plaintiffs originally requested relief in the areas of street pavement, construction of sidewalks and gutters in the Negro neighborhoods, the installation of fire hydrants, street lights, sewerage lines, street signs, and traffic lights in Negro neighborhoods, in each instance so as to give Negro residents equal benefits to such facilities; the collection of trash and garbage and the providing of landscape work in Negro neighborhoods in the same manner and with the same frequency as provided in white neighborhoods; they further requested that the defendants be required to provide recreational opportunities to all residents on a desegregated and on an equal basis; to provide police protection against traffic hazards for Negro children in an equal manner as that provided for white children; to hire and utilize Negro personnel on the police and fire departments in a number commensurate to the percentage of Negro population; and, gen-

erally, to refrain from discriminating against Negro residents of the City of Prattville in providing any and all municipal services as well as to remedy the effects of past discrimination. The City's position as refected by the pleading and the evidence is a denial that the plaintiffs or any members of their class are actionably aggrieved by any official or individual conduct on the part of the defendants. In substance, the City's position is that the City of Prattville provides the best possible municipal services to all citizens of the City without regard to race or color and, more specifically, that the City has historically provided street paving, sidewalks, rain gutters and sewerage lines only upon property assessments instituted by petitions signed by 51 or more percent of the affected landowners. Prior to the taking of the evidence in this case, the plaintiffs, by formal motion, deleted their allegations with reference to sidewalks, rain gutters, street signs, traffic lights, landscaping and police protection for children attending predominantly Negro schools.

This matter is now submitted upon the pleadings, the evidence taken orally before the Court, consisting of the testimony of numerous witnesses and exhibits to that testimony, and the briefs and arguments of the parties. Upon this submission and in this memorandum opinion this Court now proceeds to make the appropriate findings of fact and conclusions of law.

The plaintiffs are adult Negro citizens of the United States and reside in the City of Prattville, Autauga County, Alabama. The evidence reflects that these plaintiffs adequately represent a class consisting of approximately 2,200 Negro residents of the City. These named plaintiffs and other members of their class have within the past several years met with the defendants for the purpose of discussing and presenting what they considered to be grievances about the provision of municipal services. Upon these occasions the plaintiffs and the City of-

ficials have discussed, among other things, the provision of municipal services in the areas of street paving, sewage disposal, street lights, fire hydrants, recreational facilities, and police and fire protection. The individual defendants are the officials of the City of Prattville and as such have responsibility for administering the affairs of the City, including the authority to provide, allocate and finance municipal services and facilities. The evidence reflects that an overwhelming proportion of the City's expenditures for municipal services and facilities is now, and has been for several years, financed through deficit spending, that is, through the means of issuing bonds that are to be paid for at certain designated times in the future. A very small percentage of the expenditures of the City are financed from cash at hand.

The streets within the City of Prattville are generally divided into three major categories: highways that also serve as streets leading from one municipality to another; through streets which, the evidence reflects, are streets that connect one area of the city to another area in the same city; and local streets, that is, streets which are used for travel solely within one neighborhood and whose primary function is to provide access to property fronting on such streets. The City of Prattville has paved streets pursuant to objectively sound and rational criteria to the extent that it has accorded a higher priority to the paving of highways and through streets. Since the highways and through streets bear much more traffic, it is rational for the City to have chosen to pave as many such streets as it could. The evidence reflects that a rational determination as to which local streets should be paved would have to be based upon (a) the number of houses on the streets, (b) the access that such streets have to other streets, and (c) hazards created by the terrain. The evidence re-

flects that the defendants in this case have followed no such rational criteria in determining which local streets should be paved in the City. Instead, the location and construction of street paving has followed a pattern of paving local streets fronting upon property where at least 51 percent of the property owners or affected landowners petition the City authorities for such pavement. When these local streets are paved, pursuant to such petition, it is upon the basis of property assessment. The evidence also reflects that this same procedure is followed in the construction of sidewalks, rain gutters and sewerage lines. There is no evidence from which this Court can conclude that, in the location and construction of street paving in the City of Prattville, the City authorities have followed any pattern of discriminating against Negro residents by reason of their race or color. While it is true that only approximately 3 percent of the City's white residents reside in homes that are located on unpaved streets as opposed to approximately 35 percent of the City's Negro residents who reside in homes that front on unpaved streets, the reason for this variation is not based upon race.[1] The evidence also reflects that the reason that a larger percentage of the white residents are residing in houses fronting paved streets is due to the difference in the respective landowners' ability and willingness to pay for the property improvements. This difference in the paving of streets and the establishment of sewerage and water lines does not constitute racially discriminatory inequality. The equal protection clause of the Fourteenth Amendment to the Constitution of the United States was not designed to compel uniformity in the face of difference. Morse v. Boswell, 289 F.Supp. 812 (D.Md.1968), aff'd 4 Cir., 401 F.2d 544, cert. denied 393 U.S. 1052, 89 S.Ct. 687, 21 L.Ed.2d 694 (1969); Whitney v. State Tax Commission of New York, 309 U.S.

1. The most recent large paving project in the City of Prattville was the first time the City has paved without assessment some residential streets. This paving project involved the paving, to a very large degree, of streets in Negro neighborhoods.

530, 60 S.Ct. 635, 84 L.Ed. 909 (1940). The argument of the plaintiffs that the City authorities have never informed the Negro community of the steps necessary to obtain street paving is simply not borne out by the evidence. To the contrary, the Negroes in the City of Prattville either are or should be familiar with the necessary procedure for having their streets paved and their sewerage and water lines installed. There is simply no evidence to show that Negroes have been discriminated against in their right to file a petition asking for paving or sewerage or water line assessments. It is basic in our country that the ownership of property by either a white or Negro citizen involves responsibilities of ownership. Here the plaintiffs do not claim discrimination in the application of assessments or in the application of water line or gutter installation payments. This Court is clear to the conclusion that under the evidence in this case the responsibility for initiating a paving or sewerage or water line assessment and for paying for same is a reasonable attribute of property ownership.

■ As to the installation and maintenance of street lights, the evidence reflects that the criteria for street light placement in residential areas that have been used by the City of Prattville authorities have been the following: (a) a street light is to be placed at the end of every block which intersects with a street, (b) a street light is to be placed at every "T" intersection in the middle of a block, and (c) a street light is to be placed at every curve or hill in the middle of a block, where said hill or curve obstructs the lighting at the end of the block. The testimony reflects that this is a rational minimum standard that is objectively acceptable as an adequate method for providing street lights in residential areas. In the City of Prattville the present Mayor admitted while testifying upon the trial of this case that before he took office several years ago the City had evidently discriminated against Negroes in the placement and maintenance of street lights. However, the evidence also reflects that for several years the City has accepted the responsibility for providing street lights upon a basis that was designed to eliminate and has substantially had the effect of eliminating the effects of this past discriminatory practice. The City for several years has accepted the responsibility for providing street lighting to residents in the City, regardless of race. While it is true that the evidence reflects more street lights are needed in both white and Negro areas, there is no pattern of discrimination at this time in this area of providing municipal facilities.

■ The testimony in this case established that fire hydrants are located in the City at maximum intervals of 1,000 feet. This standard is recognized by the Fire Underwriters Code. The evidence indicates that water hydrants occur less frequently in Negro neighborhoods. This disparity is due to the fact that in the Negro neighborhoods there are fewer water lines which are large enough to serve fire hydrants. The difference in the placement of water lines, as in the case of sewerage lines and street pavement, is due to the ability or willingness of landowners to install them and not to arbitrary racial classification by the City, or to racially discriminatory practices by the City officials. As to that aspect of plaintiffs' case that relates to garbage collection, the evidence presented is virtually without dispute that there is no racial discrimination in the manner that garbage service is provided for the citizens in the City.

In the establishment and operation of recreational facilities, the story is different. The City of Prattville operates five parks: North Highland Park, Pratt Park, Kiwanis Park, Newton Park and Spinners Park. Pratt Park is owned by the City and is admittedly operated as a City park. The City maintains, improves, repairs and has constructed the facilities and grounds at the park. It operates with hired personnel on a full-time basis. North Highland Park is

located on land that is owned by Autauga County. However, the City of Prattville has accepted the responsibility for developing, maintaining, landscaping, and operating this facility as a City park. The City has constructed a swimming pool and a bathhouse and has placed some equipment in the park. The City has hired one person to serve as custodian of the park. Spinners Park, Kiwanis Park and Newton Park are presently owned, respectively, by the Spinners Club, the Kiwanis Club and the Civitan Club. The City of Prattville landscapes, cleans and maintains each of these parks. It has also hired a recreational director who has responsibility for supervising the individuals using these parks. The City installed a substantial portion of the equipment that is used in each of these parks. Newton Park was named by the City and has been owned by the City as a public park and recreational area; however, it was given away, at no cost, to the Civitan Club, although the City took the responsibility for developing it. Many of the facilities in these parks, including the water lines and the lights and some equipment, have been supplied or purchased by the City.

The North Highland Park is located in a Negro neighborhood in the City of Prattville. No white persons have used the recreational facilities at North Highland Park. The swimming pool and the playground areas have been and are being used exclusively by Negroes. A Negro custodian has been employed by the City to serve at North Highland Park. On the other hand, Pratt Park, Spinners Park, Newton Park and Kiwanis Park are located in white neighborhoods in the City. Up until several years ago, the City had posted a "White Only" sign at Pratt Park. While this sign is no longer posted, nothing has been done by the City to disabuse persons of the notion that the park is to be used only by white persons. Negroes in the City have had, and continue to have, considerable reluctance about using Pratt, Spinners, Newton and Kiwanis Parks. Only on the rarest occasions, such as county

fairs, has anyone seen Negroes using the facilities at either of these parks. White persons have been hired as recreational aides or directors at the parks other than North Highland Park.

Although the latest census figures reflect that there are approximately 10,000 whites and 2,200 Negroes in the City of Prattville, the ratio of the land area of the white parks compared to North Highland Park is approximately 15 to 1. The playground areas in the white parks are quite extensive, they are on landscaped grounds, and they are well repaired and cleaned fairly regularly by the City Sanitation Department. As opposed to this, there is almost no playground area in North Highland Park; the park is on a hill which the City has failed to landscape, repair or keep clean and maintain. Furthermore, the equipment and facilities at North Highland Park are substantially inferior to the equipment and facilities in the white parks. For instance, Pratt Park has three tennis courts, a community center, a substantial picnic area with numerous picnic tables and benches, a swimming pool, concession stands, several basketball and volleyball courts, and a floodlit ball park with stadium. On the other hand, North Highland Park has a swiming pool, one basketball court, one picnic table, a barbecue area, a bathhouse, most of which is in poor repair, and very little playground equipment. There is no community house at North Highland Park. Community houses are operated and maintained in Spinners Park and a community center is operated at Newton Park. All of this means that the condition of the facilities and equipment at the "white" parks in the City of Prattville is clearly superior to the condition of similar facilities and equipment at North Highland Park. The same is true insofar as the maintenance of the park is concerned. For instance, the bathhouse and the swimming pool at North Highland Park are often filthy and in disrepair.

 It is well established by now that a municipality may not discriminate in the provision of recreational facilities

and services. Mayor & City Council of Baltimore City v. Dawson, 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774 (1956); Holmes v. City of Atlanta, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 776 (1956); Muir v. Louisville Park Theatrical Association, 347 U.S. 971, 74 S.Ct. 783, 98 L.Ed. 1112 (1954); New Orleans City Park Imp. Association v. Detiege, 358 U.S. 54, 79 S. Ct. 99, 3 L.Ed.2d 46 (1958); Watson v. City of Memphis, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529 (1963). A municipality which is involved in the provision of inferior services and facilities to Negro residents is acting in violation of the Fourteenth Amendment. The defendants here have a responsibility for the unequal provision of equipment, facilities and services in the North Highland Park. Even though the City does not own the land upon which Spinners Park, Kiwanis Park, Newton Park and North Highland Park are located, the City of Prattville has played a substantial role in the incidence of ownership in these parks. This role has been such that the operation of Spinners Park, Kiwanis Park and Newton Park has been and continues to be "state action" within the meaning of the Fourteenth Amendment. See Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); Derrington v. Plummer, 240 F.2d 922 (5th Cir. 1956), and Smith v. City of Birmingham, 226 F.Supp. 838 (N.D.Ala.1963). See also Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed. 2d 373 (1966). Here, the predominant character and purpose of the five parks located in Prattville is municipal. The City has been substantially involved in the supervising, landscaping, developing, equipping, and cleaning of these parks. It is evident that plaintiffs' right to equal protection has been violated in the operation of the City parks by the City of Prattville. An order will be entered requiring the City of Prattville to take affirmative action to desegregate each of its five parks. However, since the North Highland Park is the only recreational area located near the Negro school and in a predominantly Negro neighborhood, it is essential that this Court order the defendants to substantially equalize the landscaping, equipment, cleaning and supervising of this predominantly Negro used facility.

There are three types of policemen on the City's police force in the City of Prattville: regular policemen, reserve policemen and auxiliary special policemen. The regular policemen are hired on an annual salary basis and are expected to serve on a regular shift throughout the year. Reserve policemen are paid on an hourly basis and are expected to work only upon request of the Chief of Police. Auxiliary special policemen work for no salary and are basically responsible for aiding with traffic control in the City during congested periods. The hiring of policemen for the City is the responsibility of the Mayor, the City Council and the Chief of Police. The Chief of Police reviews applications for employment with the Mayor and recommendations by them are approved or disapproved by the City Council. Presently there are 16 regular policemen hired by the City; of this number, none are Negro, all are white. At the present time there are 19 reserve policemen hired by the City; of this number, two are Negro and the remainder are white. At the present time there are 14 auxiliary special policemen appointed by the City; of this number, none are Negro, all are white. As stated earlier in this opinion, the total population of the City as of August, 1967, was approximately 10,000 white and 2,200 Negro. There has never been a Negro regular policeman in the history of the City. There have only been 4 Negro reserve policemen. There has never been a Negro auxiliary special policeman in the history of the City. Neither of the two Negro reserve policemen has ever arrested a white violator of the law.

There are two types of firemen working for the City of Prattville: regular firemen and volunteer firemen. Regular firemen receive an annual salary and are expected to serve on a regular shift

throughout the year. Volunteer firemen receive no pay for their services but are expected to help when called upon. The procedure for hiring regular firemen is that the Chief and the Assistant Chief of the Fire Department solicit written applications from persons who they deem are qualified. These officials periodically appear before the City Council in order to receive authorization to hire additional personnel. To be considered and accepted as a volunteer fireman, an applicant must file with the Fire Department a written application for membership. An applicant is accepted or rejected by vote of the existing membership of the volunteer fire department. Presently there are 7 regular firemen hired by the City; of this number, none are Negro, all are white. At the present time there are 12 volunteer firemen; of this number, none are Negro, all are white. There has never been a Negro regular fireman in the history of the City. Other than persons informally volunteering to help on specific occasions, there have never been any Negro volunteer firemen in the history of the City. Based upon these facts this Court now specifically finds that the City of Prattville has practiced and continues to practice a policy against hiring Negro policemen and firemen, both on a regular and a reserve basis. However, the evidence does not in any way show that inferior fire and police protection is afforded to these plaintiffs, or to the members of their class, by virtue of the composition of the personnel of the fire and police departments. To the contrary, all the evidence, both from the plaintiffs and the defendants, establishes that fire and police protection is afforded to all citizens in the City of Prattville without regard to race. Police escorts are provided for white and Negro funerals, Negro and white calls are answered, and protection provided, all without regard to the race of the resident and without racial classification.

It is well settled that a party, or parties, seeking relief must allege and prove such a personal stake in the outcome of the controversy as to assure concrete adversity. Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed. 2d 404 (1969); Rollins v. Shannon, 292 F.Supp. 580 (E.D.Mo.1968). Here, these individual plaintiffs, none of whom has ever applied for a position as policeman or fireman in the City of Prattville, do not have such a personal stake in the outcome of the controversy as to justify the issuance of injunctive relief by this Court. The same is true of the members of the class for whom these plaintiffs sue. What this Court now states and holds with regard to the denial of injunctive relief to these plaintiffs insofar as the discrimination in the hiring or failing to hire Negro firemen and policemen in the City of Prattville is concerned, is not to be construed by these defendants as justification for such conduct. While there has been some loss of contact and a "loss of rapport" between the police officers and the Negro community in the City of Prattville,[2] such losses will not justify the issuance of a prohibitory or mandatory injunction as to this aspect of this proceeding. Nothing said in this order or the action taken by this Court in denying plaintiffs injunctive relief in this area in this case should be construed by the defendants as a basis for denying Negro police applicants. The denial of such applicants by reason of their race or color would obviously constitute a discriminatory hiring practice in violation of the Fourteenth Amendment of the Constitution of the United States.

In accordance with the foregoing, the plaintiffs will be denied relief in each area sought except that concerning the future operation of the recreational facilities in the City of Prattville and the equalization of the recreational facility known as North Highland Park. A formal order will be entered accordingly.

---

2. This was determined to exist in a civil action tried by this Court in 1968.

Houser v. Hill, 278 F.Sppp. 920 (M.D. Ala.1968).

## JUDGMENT

Upon consideration of the findings of fact and conclusions of law made and entered in this case this date, it is the order, judgment and decree of this Court that the relief sought by the plaintiffs in the form of an injunction to restrain the defendants from continuing a policy, practice, custom and usage of providing muncipal facilities and services on a discriminatory basis and to require defendants to remedy the effects of their past policy and practice of discrimination on the basis of race, except as hereinafter specifically granted with reference to the public parks operated in the City of Prattville, be and the same is hereby denied.

It is the further order, judgment and decree of this Court that the policy, custom and usage of the defendants in denying to plaintiffs, and the other Negro citizens similarly situated, the use of any public parks owned and operated by the City of Prattville, Alabama, or supervised or serviced in any way by the City of Prattville, Alabama, including Pratt Park, Spinners Park, Kiwanis Park and Newton Park, this denial being upon account of race or color, is unconstitutional and void in that such custom, policy, practice and usage deprived plaintiffs, and other Negro citizens similarly situated, of the equal protection of the laws as secured by the Fourteenth Amendment to the Constitution of the United States.

It is the further order, judgment and decree of this Court that the defendants, their successors in office, assigns, agents, servants, employees and persons acting on their behalf, be and they are hereby permanently enjoined and restrained from following any custom, practice, policy or usage which may require plaintiffs or any other Negro similarly situated to submit to segregation in any form solely because of race or color in the use of Pratt Park, Spinners Park, Kiwanis Park and Newton Park and located in the City of Prattville, Alabama.

It is further ordered and decreed that the defendants, their successors in office, assigns, agents, servants, employees and persons acting on their behalf, within thirty days from the date of this order, take affirmative steps to advise the Negro citizens residing in Prattville, Alabama, by prominantly advertising in a paper of general circulation in the City of Prattville, Alabama, that there is no ordinance or custom or practice or policy or usage that requires Negro citizens to submit to any segregation solely because of their race in the use of Pratt Park, Spinners Park, Kiwanis Park and Newton Park, and, further, that each of said parks is available for use by Negro citizens upon the same basis that the parks are made available for use by the white citizens.

It is further ordered and decreed that the defendants, their successors in office, assigns, agents, servants, employees and persons acting on their behalf, be and they are hereby permanently enjoined and restrained from failing to substantially equalize, within one year from the date of this order, the equipment, facilities and services provided in the North Highland Park with those heretofore provided in and for Pratt Park. This equalization is to include in the North Highland Park landscaping, equipping an appropriate picnic area, constructing a community house and a floodlit ball park, with stadium, and complete maintenance. The defendants are ordered to file with this Court on or before December 30, 1970, a report, in writing, as to the steps they have taken to comply with this provision in this decree.

It is the further order and decree of this Court that the costs incurred in this proceeding be and the same are hereby taxed one-half against the plaintiffs and one-half against the defendants.